**HONDO, INCORPORATED, d/b/a Coca–Cola Bottling Company of Chicago, an Indiana Corporation, Marvin J. Herb and Metro Metals Corporation, an Illinois Corporation, Plaintiffs–Appellants,**

v.

**Jacquelyn M. STERLING, in her official capacity as Auditor of Porter County, Indiana, Defendant–Appellee.**

No. 93–1562.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1993.

Decided April 13, 1994.

776

Steven W. Handlon (argued), Handlon & Handlon, Portage, IN, for plaintiffs-appellants.

Robert A. Welsh (argued), Harris, Welsh & Lukmann, Chesterton, IN, David L. Hollenbeck (argued), Blachly, Tabor, Boxik & Hartman, Valparaiso, IN, for defendant-appellee.

Before WOOD, Jr., CUDAHY, and MANION, Circuit Judges.

MANION, Circuit Judge.

Jacquelyn M. Sterling, as Auditor of Porter County, Indiana, denied Hondo Incorporated ("Hondo") and Metro Metals Corporation ("Metro Metals") a tax abatement. Hondo and Metro Metals filed § 1983 actions against Sterling, in her official capacity. Sterling moved to dismiss these actions, asserting that they were barred by the statute of limitations. The magistrate judge granted Sterling's motions. After consenting in writing to final judgment by the magistrate, Hondo and Metro Metals appealed. We affirm.

## I. Background

In order to promote real estate development, Indiana has passed a tax abatement statute which allows persons constructing improvements on Indiana real estate in certain "economic revitalized areas"[1] to receive a reduction or "abatement" of the tax increase which results from the improvements. Ind. Code § 6–1.1–12.1–1. The tax abatement extends over ten years with a declining percentage of tax abated each year.[2]

To qualify for a tax abatement, the owner or user of the real estate must file an Application for Deduction from Assessed Valuation with the auditor of the county in which the real estate is located. The application

1. Local governments are authorized to establish "economic revitalization areas" within their boundaries. Ind.Code. § 6–1.1–12.1–2(a).

2. The declining tax abatement schedule is as follows:

| Year Tax is Payable | % of Tax Abated |
|---|---|
| 1st | 100 |
| 2nd | 95 |
| 3rd | 80 |
| 4th | 65 |
| 5th | 50 |
| 6th | 40 |
| 7th | 30 |
| 8th | 20 |
| 9th | 10 |
| 10th | 5 |

must be filed by the later of: (a) May 10 of the year in which the improvements are completed; or (b) thirty days following the date that Form 11 (entitled Notice of Assessment to Land and Improvements) is mailed to the property owner at the address shown on the records of the township assessor. Ind.Code § 6–1.1–12.1–5(b). If the application is not timely filed, but is otherwise complete, the taxpayer will receive a tax abatement but only for the years remaining on the abatement schedule. The auditor in the county in which the real estate is located decides whether the application for tax abatement is timely, as well as whether it should be granted or denied. No administrative mechanism exists to challenge the auditor's decision.

## II. Statement of Facts

Against this backdrop, we consider Hondo and Metro Metals' situation. Both Hondo and Metro Metals are taxpayers who own taxable interests in real estate located in Porter County, Indiana. On or about April 19, 1988, the Portage County assessor mailed a notice of assessment to Hondo. The notice was incorrectly addressed and not received by Hondo. On January 19, 1989 Hondo filed an abatement application for 1988 real estate taxes. Sterling denied the application as untimely, finding that the statute required Hondo to file the application within thirty days of April 19, 1988, the later of Section 6–1.1–12.1–5(b)'s timing requirements. In reaching this determination, Sterling determined that the thirty days began running, even though the notice was sent to an incorrect address, because the address used was the one contained in the assessor's records.

Similarly, on or about April 23, 1986, the Porter County Assessor mailed Metro Metals a notice of assessment. This notice was also incorrectly addressed and not received by Metro Metals. On approximately May 16, 1988 Metro Metals filed an application for a tax abatement for 1986 taxes. Sterling also denied this application as untimely, finding that Metro Metals should have filed the application within thirty days of April 23, 1986.

Again Sterling concluded that the thirty days began running from the date the notice was mailed, even though it was sent to an incorrect address, because the address used was the one contained in the assessor's records.

Because no administrative mechanism exists to challenge Sterling's decision, Hondo and Metro Metals filed suit in Porter County, Indiana, seeking a declaratory judgment that Ind.Code § 6–1.1–12.1–5(b) required notice to be mailed to a correct address, if known. Hondo's complaint was filed on January 16, 1990 and Metro Metals' was filed on October 11, 1988. Hondo's action is still pending. Metro Metals' action was dismissed, and this dismissal was affirmed by the Indiana Court of Appeals on December 19, 1990. Metro Metals attempted to appeal that decision, but the Indiana Supreme Court denied leave for transfer on May 20, 1991. Metro Metals and Hondo responded by filing this § 1983 action against Sterling in federal court on March 13, 1992. Sterling moved to dismiss the complaint claiming that the § 1983 claims were barred by the statute of limitations. The district court agreed and dismissed the complaint under Rule 12(b)(6).[3] Hondo and Metro Metals appeal.

## III. Analysis

We have jurisdiction to review the magistrate's 12(b)(6) dismissal because the parties consented in writing to the entry of a final judgment by the magistrate. 28 U.S.C. § 636(c)(3). We review a 12(b)(6) dismissal de novo. *Caldwell v. City of Elwood,* 959 F.2d 670, 671 (7th Cir.1992). A Rule 12(b)(6) motion to dismiss will be granted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Applying this standard, we must determine whether Hondo and Metro Metals' § 1983 claims are barred by the statute of limitations.

Hondo and Metro Metals make two arguments in support of their position that their § 1983 claims are not barred by the statute

3. Sterling had moved to dismiss for lack of subject matter jurisdiction. The magistrate judge, however, noted that a 12(b)(6) motion was the appropriate mechanism to dispose of a case on statute of limitations grounds. Therefore, the court treated the motion as a 12(b)(6) motion.

of limitations. First, they argue that the § 1983 claim did not accrue until the Indiana Supreme Court refused to grant leave for transfer on May 20, 1991. Second, they claim that even if the cause of action accrued before that date, it was tolled while the state action was pending. We consider both issues in turn.

## A. Accrual of Statute of Limitations

▬ A § 1983 action is subject to the statute of limitations governing personal injury claims in the state where the alleged injury occurred. *Wilson v. Garcia,* 471 U.S. 261, 279, 105 S.Ct. 1938, 1948–49, 85 L.Ed.2d 254 (1985); *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir.1992). The alleged injury in this case occurred in Indiana. The Indiana statute of limitations for personal injury requires a suit to be filed within two years of the accrual of the cause of action. Ind.Code § 34–1–2–2(1). Federal law determines when a claim accrues. *Giesen,* 956 F.2d at 740. A § 1983 claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action. *Id.*

The injury which Hondo and Metro Metals complain of is a deprivation of a property right—in this case, a tax abatement—without due process.[4] While it is unclear the exact date that Hondo and Metro Metals knew that they were denied tax abatements, it is clear that they knew of the injury when they filed suit against Sterling in state court. Therefore, by January 16, 1990 Hondo knew of its injury and by October 11, 1988 Metro Metals knew of its injury. This was more than two years before they filed their § 1983 complaint on March 13, 1992. Therefore, the statute of limitations bars these actions. *See*

*Kelly v. City of Chicago,* 4 F.3d 509, 512–13 (7th Cir.1993).

In response, Hondo and Metro Metals claim that their § 1983 claim could not accrue until their claims were ripe for adjudication and they assert that this did not occur until the Indiana Supreme Court denied their motion for leave to transfer on May 20, 1991. They point to *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), in support of their position. In *Williamson County,* the Supreme Court held that a violation of a governmental regulation is only ripe for adjudication once "the government entity charged with implementing the regulation has reached a final decision" regarding its application. *Id.* at 186, 105 S.Ct. at 3116. Here the county auditor, the government entity charged with implementing the tax abatement statute, reached her final decision not to allow the abatement well before the Indiana Supreme Court denied transfer. The auditor's decision could not be appealed.[5] Thus, *Williamson County,* if anything, only supports the proposition that the claim in this case accrued when Sterling denied the abatements, which was more than two years before Hondo and Metro Metals got around to filing this suit. Moreover, we have held that "the availability of a state appeals process had no ... effect on the accrual date" for a § 1983 claim. *Kelly,* 4 F.3d at 512.

Appellants respond that the state court is the governmental entity which must act before their claim is ripe because if the state court were to grant them a declaration that they were entitled to tax abatements this case would be unnecessary. In *Harlan Sprague Dawley, Inc. v. Indiana Dep't of*

---

4. We need not decide whether a tax abatement is a property right protected by the Constitution.

5. The parties agree that no administrative or appeal process was available to the taxpayers to administratively contest the auditor's denial of benefits. It is unclear whether this is a completely accurate statement: "Even though the legislature did not expressly provide a procedure to obtain review of IC 6–1.1–12.1, *et seq.,* the legislature did provide a method by which a taxpayer may appeal a tax assessment which the taxpayer believes to be illegal or incorrect. That is, a taxpayer may file a petition [with the State

Board of Tax Commissioners] under IC 6–1.1–15–12 alleging that the taxes imposed are illegal as a matter of law, or that an error of omission has resulted from a county officer's failure to give the taxpayer credit for a deduction permitted by law." *Indianapolis Historic Partners v. State Bd. of Tax Comm'rs,* 563 N.E.2d 1345, 1348 (Ind.Tax 1990). Because the Indiana state court did not require an appeal to the State Board of Tax Commissioners in the underlying litigation, we accept the parties' assertion that no administrative appeal process existed.

*Revenue,* 583 N.E.2d 214 (Ind.Tax 1991), the Indiana Tax Court used this very rationale to support its jurisdiction to hear not only the challenge to an Indiana sales tax law under state law but also under § 1983. Prior to *Harlan Sprague* it was well established that state courts have "concurrent jurisdiction to enforce rights created by a federal statute," such as § 1983. *Colvin v. Bowen,* 399 N.E.2d 835, 837 (Ind.App.1980); *Harlan Sprague,* 583 N.E.2d at 217. Thus, in *Harlan Sprague* the question was not whether § 1983 jurisdiction existed in state courts, but whether it existed in state courts of limited jurisdiction, such as the Indiana Tax Court. In addressing this issue, the tax court noted that the plaintiff's "§ 1983 claim would be sustained under one interpretation of the Indiana sales tax laws, but defeated under a different interpretation." *Harlan Sprague,* 583 N.E.2d at 218. The court further reasoned that "[t]he cause of action is created by the alleged violation of Indiana's tax statutes; the federal remedy claimed depends on the construction of Indiana sales tax law; the petition reveals the need to determine the meaning and application of Indiana's sales tax law; and the disputed exemption from Indiana sales tax is an essential element in determining whether a violation of the Constitution permits a § 1983 remedy." *Id.* at 219. Accordingly, the court concluded that the tax court had jurisdiction to hear the § 1983 claim.

In this case, jurisdiction rested in an Indiana court of general jurisdiction rather than the Indiana Tax Court. But the rationale underlying *Harlan Sprague,* (that a § 1983 claim should be considered in tandem with a state challenge to a state tax question) applies equally to a § 1983 tax question presented before a court of general jurisdiction. *See also Holmes v. Randolph,* 610 N.E.2d 839 (Ind.1993) (plaintiff filed § 1983 action to determine constitutionality of notice provisions without previous state judicial proceedings).

■ Moreover, Indiana has recognized that once administrative remedies are exhausted, "the plaintiff still ha[s] the right to come back and file a new claim under § 1983 and join it with her review of the administra-

tive decision." *Stevens v. Department of Public Welfare,* 566 N.E.2d 544, 547 (Ind. App.1991). In fact, res judicata principles would seem to preclude a § 1983 action which is not brought along with a judicial challenge to an auditor's decision. Res judicata bars relitigation of an issue which was or could have been litigated in a former suit. *Leal v. Krajewski,* 803 F.2d 332, 334 (7th Cir.1986). "Under Indiana law there are four basic elements of res judicata: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the matter at issue was, or might have been, determined in the former suit; (3) the controversy adjudicated in the former suit was between parties to the present suit; and (4) the judgment in the former suit was rendered on the merits." *Id.* These requirements appear satisfied. *See id.* (holding that prior state court judgment adverse to employee had res judicata effect and barred subsequent § 1983 action). But we need not rest our holding on res judicata because the statute of limitations clearly prevents this litigation.

Whether a federal court would hear the appellants' § 1983 action is another question since "the Supreme Court continues to recognize the vitality of equitable restraint in federal courts hearing cases challenging state taxation under § 1983." *Harlan Sprague,* 583 N.E.2d at 221. *See Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). But in state court, plaintiffs need not "exhaust State administrative and judicial requirements before pursuing a § 1983 claim." *Impink v. City of Indianapolis Bd. of Public Works,* 612 N.E.2d 1125, 1129 (Ind.App. 1993). *See Bielski v. Zorn,* 627 N.E.2d 880, 888 (Ind.Tax 1994), citing *Murtagh v. County of Berks,* 634 A.2d 179, 181 (1993). In fact, the *Harlan Sprague* court announced that "[b]ecause federal fora are unavailable, state courts possessing concurrent jurisdiction over § 1983 claims are the only fora in which a § 1983 claim can be raised." *Harlan Sprague,* 583 N.E.2d at 225. The *Harlan Sprague* court reasoned that "a § 1983 claim asserted simultaneously with other properly asserted claims in state court does not summon the evils the exhaustion rule is intended

to prevent. Federalism concerns are absent in a state forum. Moreover, pursuing the state's judicial remedies does not bridle federal rights because state courts are required not to discriminate against federal issues." *Harlan Sprague,* 583 N.E.2d at 224–25.

In sum, Hondo and Metro Metals' § 1983 due process claims accrued when they knew or should have known that Sterling denied their tax abatement applications. Their claims were also ripe at this time, as they could have brought a § 1983 claim in state court, along with their declaratory judgment action. *See, e.g., Kelly,* 4 F.3d at 511 ("The plaintiffs certainly could have filed a section 1983 suit on September 1, 1988, claiming their liquor license was revoked without due process."). Accordingly, the ripeness principles of *Williamson County* do not alter our determination that Hondo and Metro Metals' claims accrued more than two years before the filing of their complaint.

*B.  Tolling*

▮ The appellants argue that even if the statute of limitations accrued when they knew that the auditor had denied their tax abatement applications, their claims are not barred because the statute of limitations was tolled during the pendency of the state litigation. State tolling principles govern a § 1983 claim. *Board of Regents v. Tomanio,* 446 U.S. 478, 484–86, 100 S.Ct. 1790, 1795–96, 64 L.Ed.2d 440 (1980). Thus, we look to Indiana law to determine whether the statute of limitations was tolled.[6]

The appellants point to three Indiana cases to support their position that the pendency of a state action tolls the statute of limitations: *McAfee v. Reynolds,* 130 Ind. 33, 28 N.E. 423 (1891);  *Torres v. Parkview Foods,* 468

N.E.2d 580 (Ind.App.1984); and *Slater v. Stoffel,* 140 Ind.App. 131, 221 N.E.2d 688 (1966). These cases are distinguished from the case at hand. First, *McAfee* does not enlighten us as to Indiana tolling principles because it did not involve the tolling of the statute of limitations but rather considered the enforceability of a judgment lien. *Slater* and *Torres* set forth Indiana tolling principles, but these principles make clear that the statute of limitations should not be tolled in this situation.

*Torres* explained that tolling principles were "designed to insure to the diligent suitor the right to a hearing in court till [sic] he reaches a judgment on the merits." *Torres,* 468 N.E.2d at 583, (quoting *Gaines v. City of New York,* 215 N.Y. 533, 109 N.E. 594, 596 (1915)). *Torres* further explained that tolling was appropriate in *Slater* because the "action failed prior to a judgment on the merits." *Torres,* 468 N.E.2d at 582. Accordingly, in *Torres,* the court concluded that where a federal claim was dismissed for lack of diversity jurisdiction, the statute should be tolled for a subsequent state action involving the same parties. *Id.* at 583. And in *Slater,* 221 N.E.2d 688, the court concluded that the statute of limitations should be tolled for a subsequent state action where the federal claim was dismissed under the mistaken belief that the Indiana probate statute required the plaintiff to bring suit in state court. *Id.* at 692–93.[7]

This is not a case where a complaint is dismissed before a final judgment is reached on the merits. Rather, in this case, Metro Metals received a full hearing on its allegations that the auditor's application of the notice provision was improper, and Hondo's suit is still pending. Accordingly, the cases

---

6. Even though state tolling provisions apply to § 1983 suits, if federal tolling principles are "essential to the vindication of federal rights," they should also be considered. *Heck v. Humphrey,* 997 F.2d 355, 358 (7th Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 751, 127 L.Ed.2d 69 (1994). "[I]t follows that a body of state tolling law that lacks a provision for equitable tolling is inconsistent with the provision of a complete federal remedy under section 1983 and therefore is overridden by the federal doctrine." *Id.* We have set forth the requisite inquiry for federal equitable tolling in *Heck. Id.* We need not proceed with this inquiry, however, because the

appellants have waived the issue by raising it for the first time in their reply brief. *Bobo v. Kolb,* 969 F.2d 391, 400 (7th Cir.1992).

7. *Slater* also noted that tolling was only appropriate if the time lapse was not attributable to the plaintiffs' fault or neglect. *Id.* at 692. The appellants fail to explain their decision not to file timely suit in federal court, other than to say that they did not know they had a § 1983 claim. We have already rejected this excuse. Thus, their failure can be no one's fault but their own.

the appellants cite do not compel us to find that the statute of limitations was tolled.

■ Moreover, tolling is an equitable doctrine, *Donnella v. Crady*, 185 N.E.2d 623, 625 (Ind.App.1962), and equity in this situation would advise against allowing the plaintiffs another bite at the apple. Sterling has defended plaintiffs' lawsuits since 1988 and 1990. To require Sterling to undergo the time, frustration and expense all over again does not further the equitable principles underlying Indiana's tolling principles. The appellants could have filed a § 1983 claim in state court along with their declaratory complaint. *See Holmes v. Randolph*, 610 N.E.2d 839 (Ind.1993) (class action was brought under § 1983 challenging validity of notice provisions of statutes governing disposal of abandoned vehicles). They did not do so. We will not penalize the defendant for the plaintiffs' strategic delay.

■ Appellants respond by claiming that without tolling the federal judicial system would be unnecessarily clogged with § 1983 actions. The Supreme Court rejected this argument in *Board of Regents v. Tomanio*, 446 U.S. at 492, 100 S.Ct. at 1799, concluding that while tolling "might encourage more plaintiffs with both state and federal constitutional claims to initially bring an action in the state courts" the Court would not supplant state tolling principles to further this goal. Moreover, comity prevents federal courts from hearing § 1983 challenges to state tax laws. *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. at 116, 102 S.Ct. at 186. We also will not alter Indiana tolling principles, which currently do not toll the statute of limitations.[8]

## IV. Conclusion

Hondo and Metro Metals' § 1983 claims accrued when they knew or should have known that they were denied their tax abatements. At the latest this occurred on January 16, 1990 for Hondo and on October 11, 1988 for Metro Metals. Hondo and Metro Metals did not file their § 1983 claims until March 13, 1992. Therefore, these claims are barred by Indiana's two-year statute of limitations. Moreover, Indiana tolling principles do not prevent the running of the statute of limitations. For these and the foregoing reasons, we

AFFIRM.

CUDAHY, Circuit Judge, concurring in the judgment.

I believe the judgments here should be affirmed essentially because in a § 1983 suit there is no requirement for exhaustion of state administrative or judicial remedies. *Patsy v. Florida Bd. of Regents*, 457 U.S. 496, 500, 102 S.Ct. 2557, 2559–60, 73 L.Ed.2d 172 (1982); *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 481–82, 5 L.Ed.2d 492 (1961). In *Patsy*, the Court noted that an exhaustion requirement would raise the very same issues presented here: "Beyond the policy issues that must be resolved in deciding *whether* to require exhaustion, there are equally difficult questions concerning the design and scope of an exhaustion requirement. These questions include ... what tolling requirements and time limitations should be adopted [and] what is the res judicata and collateral estoppel effect of particular administrative determinations." 457 U.S. at 513–14, 102 S.Ct. at 2566–67. In connection with the time limitations question, the Court noted that "unless the doctrine that statutes of limitations are not tolled pending exhaustion were overruled, see *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), a judicially imposed exhaustion requirement might result in the effective repeal of § 1983." *Id.* at 514 n. 17, 102 S.Ct. at 2566 n. 17.

I therefore agree with the conclusion of the majority that the § 1983 causes of action were ripe when County Auditor Sterling denied the respective applications for abatement filed by Hondo and Metro Metals. This is merely the flip side of the no-exhaustion principle. On the other hand, there was no requirement that the § 1983 claim be filed in state court. This does not seem to me to

---

**8.** Furthermore, for purposes of judicial economy, what does it matter if a suit is brought immediately or after years of protracted litigation? In both situations, the plaintiff will invoke the federal judiciary.

be a case of splitting a cause of action and that issue has certainly not been raised by the parties. *Cf. Marrese v. American Academy of Orthopaedic Surgeons,* 726 F.2d 1150 (7th Cir.1984).

I also agree with the majority in the matter of tolling. In *Board of Regents v. Tomanio,* the Supreme Court addressed a statute of limitations very similar to the one before us. 446 U.S. at 481–83, 100 S.Ct. at 1793–94. In *Tomanio,* a litigant had first gone to state court to challenge an action on statutory grounds and then came into federal court only to find that the statute of limitations had expired while she pursued her state remedies. The Court held that we look to the state's tolling provisions, so long as they are not inconsistent with federal law. *Id.* at 486, 100 S.Ct. at 1796. New York did not toll the statute of limitations in that circumstance, and, for comity reasons, the Court would not disturb New York's "choice" of tolling provisions. Justice Brennan dissented, for the same reasons that arise here: he was concerned that a litigant who had not slept on her claim, but had chosen to try first in state court (perhaps fearing that federal courts might invoke an abstention doctrine if state proceedings were pending) should not be penalized for doing so. *Id.* at 496, 100 S.Ct. at 1801. Moreover, he pointed out, New York's tolling provisions were unlikely to provide relief, since a unitary state system, unlike the dual federal system, would not need to contemplate tolling when a claim is pending in a different court system. *Id.* at 495, 100 S.Ct. at 1800–01.

After *Tomanio,* we look to whether Indiana tolls the statute of limitations here. It seems clear from the cases discussed by the majority that the limitations period would not be tolled. And since Hondo did not raise an equitable tolling argument until too late, we cannot consider that here.

In addition, I think the majority has rightly pointed out—although none of the parties did—that the doctrine of equitable restraint might well foreclose federal court consideration of the § 1983 tax claim in any event. *See Fair Assessment in Real Estate Ass'n*

*Inc. v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981).